# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Jerome Cole, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 13 C 3969 |
| | ) | |
| The Board of Trustees of Northern Illinois University, et al., | ) | |
| | ) | |
| Defendants. | ) | Judge Frederick J. Kapala |

## ORDER

Defendants' motion to dismiss [52] is granted in part and denied in part. Counts IV, V, and VI are dismissed.

## STATEMENT

Plaintiff, Jerome Cole, has sued his current employer, the Board of Trustees of Northern Illinois University ("NIU"), and several of NIU's employees, Charlotte Marx, Tammie Pulak, Jeff Daurer, Sara Cliffe, Brian Hart, Emily Murray, Jesse Perez, John Holmes, Rhonda Richards, and Bill Nicklas (collectively the "individual defendants"), alleging violations of 42 U.S.C. § 1981, 42 U.S.C. § 1983, Title VII, the whistleblower provisions of the Illinois State Officials and Employees Ethics Act ("Ethics Act"), the Illinois Whistleblower Act, and 42 U.S.C. § 1985(3), claiming discrimination in his employment. Cole alleges he was demoted and subjected to a hostile work environment on account of his race and protected complaints. Currently pending before the court is defendants' motion to dismiss for failure to state a claim, which seeks dismissal of all of Cole's claims. For the reasons which follow, that motion is granted in part and denied in part.

### I. BACKGROUND

According to plaintiff's complaint, during the relevant period of this lawsuit he worked as the only black male supervisor in the NIU Building Services Department, and no other black male had held such a position going back at least to 1980. In August 2012, Cole became aware that various departments at NIU were receiving commodity orders in his name without his authorization or knowledge. Cole reported that fact to defendant Hart, who was his supervisor and at the time the NIU superintendent of building services, and informed Hart that Cole had never placed orders without first receiving approval from Hart or defendant Wilhelm, a building services supervisor. Cole asked Hart to investigate the matter, but Hart told Cole "not to worry about it" and allegedly performed no investigation.

Shortly thereafter, Wilhelm presented Cole with a stack of paperwork, some of which

included bills of lading which appeared to be signed by Cole for various commodity purchases. Cole informed Wilhelm that he had not signed the bills of lading or ordered any of the commodities and requested that Wilhelm perform an investigation into the falsely signed documents, which Wilhelm refused to do.

Cole took those bills of lading and other documents to NIU's HR department, specifically to defendants Perez (assistant director of labor relations and a HR officer), Cliffe (director of compliance), and Murray (affirmative action officer). Cole informed all three that he had not ordered the items in the documents. Thereafter, defendant Daurer (alleged to be both the superintendent of building services and the VP of capital budget and planning) told him that, despite the "mis-dealings" in the department, Cole should "be on his team" and to "let the past be the past . . . we need to move forward." Daurer also allegedly refused to conduct any investigation into Cole's claims. Daurer, Cliffe, and Murray have allegedly never provided Cole with an explanation of the bills of lading. Cole believes that Wilhelm, Perez, Cliffe, and Murray "used him as a straw man to cover-up" the bill of lading issues.

Beginning in August 2012, around the same time as Cole became aware of the fraudulent commodity orders, Cole filed a formal complaint with Cliffe and Murray that he believed that some building services workers (allegedly those with connections to management at NIU) were being paid for more hours than they had worked. Cole alleges that he was the only supervisor who was assigned workers with connections to management. Perez told Cole "not to worry about it" and Perez, Cliffe, and Murray refused to investigate the matter further.

In October 2012, Cole alleges that Wilhelm, Pulak (another building services supervisor), and Marx (the locksmith foreman at NIU) falsely accused him of unauthorized possession of a set of keys and use of those keys to open Cole's previous supervisor's[1] office door without authorization. No one else was accused of doing the same. Cole complained about the false accusation to Perez and Nicklas, but they apparently took no action. According to Cole, at the time of the accusation, Wilhelm, Pulak, and Marx all knew the keys had been returned to NIU and that Cole could not have opened the door.

In November 2012, Cole was demoted to sub-foreman by Daurer, Richards (another building services supervisor), Wilhelm, Perez, and Pulak. Cole was not provided a reason for the demotion and pay cut, which came to approximately $4.00 an hour. Cole alleges that other non-minorities in his department with less or equal experience as Cole were not demoted or given pay cuts.

Because of his demotion, Cole was required to move work stations. At his new workstation, Cole discovered a hangman's noose, which he then threw out. The following day, he discovered the same noose replaced at his work station. Cole alleges that Richards and Holmes (another building services employee) knew of the noose before Cole moved into the work station on the first day yet decided not to remove it. Cole considered the repeated appearance a threat and thus took the noose to the NIU police department. The NIU police department allegedly questioned Holmes, who was thereafter called into Richards' office along with Cole. Richards questioned Holmes about whom he spoke to at the NIU police department and then contacted the investigator. The NIU police

---

[1]The complaint does not name this previous supervisor.

department has not since provided an update to Cole concerning the noose. Holmes was promoted to building services foreman shortly thereafter. Unsatisfied with the police response to the noose incident, Cole complained to Perez, Cliffe, Murray and Daurer, all of whom refused to conduct an investigation into the matter.

In January 2013, Cole was again accused by Pulak of unauthorized possession of a set of keys. Cole was ordered (it is unclear by whom) to search in the snow for forty-five minutes for the keys, despite advising his supervisor that he had at no time possessed the keys. Another foreman apparently admitted to Pulak that he had the key (although it is not clear if this came before or after Cole was accused and ordered to search in the snow). Cole complained to Perez, but Perez allegedly took no action. In April 2013, Cole was subjected to a final key accusation, wherein Daurer informed Richards that Cole had unauthorized possession despite knowing that Cole did not have the keys in question.

In October 2013, after filing an EEOC charge complaining about discrimination, Daurer and Richards held a disciplinary hearing without Cole being present. As a result, and without Cole's input, he was suspended for three days. In a memorandum dated November 12, 2013, NIU threatened to take further disciplinary action against Cole, including termination. Neither Daurer, Richards, nor NIU explained the reason for the discipline or threats of termination.

Based on the above, Cole sets out the following counts in his second amended complaint: disparate treatment and/or retaliation and/or hostile work environment based on his race in violation of 42 U.S.C. § 1981 against the individual defendants (Count I); disparate treatment and/or retaliation and/or hostile work environment based on his race in violation of Title VII against NIU (Count II); disparate treatment based on his race in violation of the Equal Protection Clause pursuant to 42 U.S.C. § 1983 against all of the individual defendants (Count III); retaliation in violation of the Ethics Act against the individual defendants (Count IV); retaliation in violation of the Whistleblower Act against the individual defendants (Count V); and conspiracy to violate his constitutional rights against the individual defendants pursuant to 42 U.S.C. § 1985(3) (Count VI). Defendants have moved to dismiss the second amended complaint, arguing: (1) Count II must be dismissed against NIU because it fails to state a claim under Title VII; (2) Counts I and III must be dismissed against all defendants because they fail to state a claim pursuant to § 1981 or § 1983; (3) sovereign immunity requires the dismissal of Counts IV and V against the individual defendants; (4) Count V fails to state a claim against the individual defendants; and (5) Count VI fails to state a claim for § 1985(3) conspiracy. The court will address each of the arguments in turn.

## II. ANALYSIS

### A. Standards

When deciding a defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all of the well-pleaded allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Killingsworth v. HSBC Bank Nev., N.A., 507 F.3d 614, 618 (7th Cir. 2007). To state a claim under the Federal Rules, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . state

a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." Id. at 679.

### B. Sufficiency of the Title VII Allegations[2]

Defendants argue that Count II of the amended complaint fails to adequately allege disparate treatment, hostile work environment, or retaliation on account of race in violation of Title VII against NIU, Cole's employer.

To state a claim for disparate treatment based on race, Cole must plausibly allege that he "was subjected to intentional discrimination based on" his race. Chaib v. Indiana, 744 F.3d 974, 981 (7th Cir. 2014). Thus, Cole must set out factual allegations to show: (1) he is a member of a protected class, (2) he was subjected to an adverse employment act, and (3) there is a link between those two. See Martino v. W. & S. Fin. Grp., 715 F.3d 195, 201-02 (7th Cir. 2013). However, the Seventh Circuit has recently explained that the third of these need not be set out with plausible factual allegations, instead a plaintiff can rely on conclusory allegations that the first and second are linked by racial animus. See Luevano v. Wal-Mart Stores, Inc., 722 F.3d 1014, 1028 (7th Cir. 2013); see also Carlson v. CSX Transp., Inc., ___ F.3d ___, No. 06-3436, 2014 WL 3361072 (7th Cir. July 10, 2014); Tamayo v. Blagojevich, 526 F.3d 1074, 1084 (7th Cir. 2008); E.E.O.C. v. Concerta Health Servs., Inc., 496 F.3d 773, 782 (7th Cir. 2007).

Cole has pled that he is black, which is a protected class under Title VII. An adverse employment act for disparate treatment purposes is some act by the employer which causes a "qualitative change in the terms or conditions of [the employee's] conditions of employment or some sort of real harm." Chaib, 744 F.3d at 982 (quotation marks omitted). Cole has only pled two adverse employment actions: his demotion and transfer in November 2012 and the three day suspension in October 2013. He conclusorily links both adverse employment actions to his race, which is enough. See Luevano, 722 F.3d at 1028. Moreover, Cole has pled that the fraudulent bills of lading filled out in his name and the employees being overpaid under his supervision with ties to management were both targeted only to him, and that none of the other supervisors (all of whom were non-black) faced similar actions. Furthermore, Cole has pled that a hangman's noose was placed at his new workstation and then replaced after being discarded. All of these allegations suggest that racial animus may be present in the building services department at NIU, and thus plausibly suggest the demotion and suspension were motivated, at least in part, by racial animus. Nothing more is needed at this point. See Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010) (noting that, under the plausibility standard, a plaintiff need only "give enough details about the subject-matter of the case to present a story that holds together"). Thus, even if conclusory allegations were insufficient, the complaint sets out a plausible link. Thus, the motion is denied to

---

[2]In their motion, defendants argue that, at the very least, Count II should be dismissed against several of the individual defendants. However, this court does not read the second amended complaint as bringing claims under Title VII against the individual defendants. However, if the second amended complaint did purport to bring claims under Title VII against the individual defendants, the claims would be subject to dismissal because Title VII does not authorize suits against individuals, just employers. See Worth v. Tyer, 276 F.3d 249, 262 (7th Cir. 2001) ("[S]upervisors are not liable in their individual capacities under Title VII.").

4

the extent it seeks dismissal of the disparate treatment claim in Count II against NIU.

Similarly, "Title VII also forbids employers from retaliating against employees by taking adverse employment actions for complaining about prohibited discrimination." Chaib, 744 F.3d at 986. Thus, Cole must set out allegations to show: (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there is a link between those two. See Humphries v. CBOCS W., Inc., 474 F.3d 387, 404 (7th Cir. 2007). Again, however, the third need only be averred in a conclusory allegation. See Luevano, 722 F.3d at 1029. Cole has alleged that he engaged in the following protected activities: the November 4, 2012 complaint to the police about the noose, the undated complaint to NIU's human resources department and various individual defendants about the noose, and the complaint to the EEOC of discrimination which happened sometime prior to October 15, 2013 (the second amended complaint mentions many other "complaints" to NIU or various individual defendants, but no indication that those complaints were complaining about racial discrimination rather than the racially-neutral discrete acts which predicated them). The first and second are linked to an adverse employment act—at least the suspension, as the demotion occurred before any of the protected activities—by conclusory allegations, which are sufficient. See id. The third is also linked to the suspension, but the suspension appears to have occurred close in time after the EEOC complaint, although the second amended complaint is not entirely clear on this point. Nevertheless, although suspicious timing by itself is generally insufficient to survive summary judgment, it is sufficient to nudge a complaint from possible to plausible where the timing is close enough. See ACLU of Ill. v. City of Chi., No. 75 C 3295, 2011 WL 4498959, at *3 (N.D. Ill. Sept. 23, 2011). Thus, that link would be plausible even if conclusory allegations were not sufficient. Accordingly, the court finds that Cole has plausibly alleged a retaliation claim and the motion to dismiss is denied as to the retaliation claims in Count II against NIU.

Finally, "Title VII prohibits the creation of a hostile work environment." Chaib, 744 F.3d at 985 (quotation marks omitted). In order to state a claim for hostile work environment, Cole must set out factual allegations to plausibly show: "(1) the work environment must have been both subjectively and objectively offensive; (2) [his race] . . . must have been the cause of the harassment; (3) the conduct must have been severe or pervasive; and (4) there must be a basis for employer liability." Id. Title VII is not a code of civility, instead it only makes harassment actionable when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Cerros v. Steel Techs., Inc., 288 F.3d 1040, 1045-46 (7th Cir. 2002) (alteration and quotation marks omitted). Cole's allegations concerning his working environment include: the fraudulent bills of lading, the overpaid staff under his supervision with ties to management, the assorted key allegations, and the two hangman's noose incidents. The first three contain no direct link to harassment on account of Cole's race. See Orton-Bell v. Indiana, ___ F.3d ___, No. 13-1235, 2014 WL 3566338, at *6 (7th Cir. July 21, 2014) (noting, in the summary judgment context, that night-shift workers who had sex on plaintiff's desk did not create hostile work environment based on gender without some evidence that the behavior was because plaintiff was a woman). However, Cole alleges that he was the only building services supervisor to whom the assorted things happened and also happened to be the only black supervisor. Id. (noting that evidence of different treatment of a man in the same situation would be sufficient). Moreover, the noose incidents certainly contain a reasonable inference as being related to Cole's race. See Porter v. Erie Foods Int'l, Inc., 576 F.3d

5

629, 635-36 (7th Cir. 2009) ("The noose in this context is a symbol not just of racial discrimination or of disapproval, but of terror. . . . Like a slave-masters whip, the image of a noose is deeply a part of this country's collective consciousness and history, any further explanation of how one could infer a racial motive appears quite unnecessary." (alteration, citation, and quotation marks omitted)). The court concludes that, accepting those allegations as true, plaintiff has pled a plausible hostile work environment claim based on his race. Thus, the motion to dismiss is denied as to Count II.

### C. Sufficiency of the § 1981 and § 1983 Allegations

Defendants next challenge the sufficiency of the allegations for Counts I (§ 1981) and III (§ 1983). Disparate treatment and retaliation claims based on a violation of the Equal Protection Clause in the employment context pursuant to § 1983 are identical to Title VII claims in all relevant aspects, see Lavalais v. Vill. of Melrose Park, 734 F.3d 629, 635 (7th Cir. 2013), except that (1) Title VII claims are brought against an employer while § 1983 claims must be brought against an individual government officer and, more importantly, (2) conclusory allegations of the causative link are not sufficient, instead plaintiff must offer "facts that might plausibly support" the discriminatory intent link.[3] Sung Park v. Ind. Univ. Sch. of Dentistry, 692 F.3d 828, 832-33 (7th Cir. 2012). Section 1981 and Title VII also use the same tests when dealing with employment discrimination, indeed § 1981, unlike § 1983, permits a plaintiff to proceed with conclusory allegations of the discriminatory intent link. See Humphries, 474 F.3d at 403-04 (noting that the Title VII and § 1981 tests are the same); Petrovic v. Enter. Leasing Co. of Chi., LLC, 513 F. App'x 609, 610-11 (7th Cir. 2013) (holding that, in the § 1981 context, conclusory allegations of discriminatory intent are sufficient to plausibly state a claim). Additionally, § 1981 permits suits to proceed against both employers and supervisors for employment discrimination, see Smith v. Bray, 681 F.3d 888, 896 n.2 (7th Cir. 2012), although in this case Cole has elected to proceed in Count I against the individual defendants only. (See Second Amend. Compl. 10.)

Defendants primarily argue the same broad bases for dismissal as they do for Title VII based on discriminatory intent. For the same reasons as set out above, however, Cole has plausibly stated claims for disparate treatment (Counts I & III), retaliation (Count I), and hostile work environment (Count I) based on race. Moreover, defendants admit that plaintiff has at least conclusory allegations of discriminatory intent for each individual defendant, which is sufficient for the purposes of Count I. See Petrovic, 513 F. App'x at 610-11. Finally, to the extent defendants intend to challenge that specific individual defendants should be dismissed, they have not set out any argument as to why any particular defendant should be dismissed for failure to state a claim, and the court will not do so on their behalf. See United States v. Wescott, 576 F.3d 347, 356 (7th Cir. 2009) (stating that unsupported and undeveloped arguments are waived). Accordingly, that part of the motion seeking to dismiss Counts I and III is denied.

---

[3]The court recognizes there may be some tension between the holding in Sung Park that conclusory allegations of discriminatory intent are insufficient in § 1983 employment discrimination claims and the holding in Luevano and the other cases cited supra that conclusory allegations of discriminatory intent are sufficient in Title VII employment discrimination claims. The court will apply the law as it is currently written.

6

## D. Sovereign Immunity

Defendants next argue that Counts IV and V, the Ethics Act and Whistleblower Act counts, should be dismissed as barred by sovereign immunity because Illinois has not waived immunity as to those claims and the claims, although purportedly brought against the individual defendants, are actually brought against the state.

The Illinois State Lawsuit Immunity Act, 745 ILCS 5/1, provides generally (with a relevant exception discussed infra) that the State of Illinois is immune from suit in any court except the Illinois Court of Claims. See Richman v. Sheahan, 270 F.3d 430, 441 (7th Cir. 2001). "These state immunity rules apply to [Cole's] state law claims in federal court." Id. Here, however, Cole has sued individual officers rather than the state itself in Counts IV and V. A "claim against individual officers will be considered against the state" if the individual officers were (1) acting within the scope of their authority, (2) performing a duty not owed by the public generally independent of state employment, and (3) engaged in matters ordinally within that employee's normal and official functions. Id.

In response, Cole only argues that the actions of the individual defendants were outside the scope of employment. However, as in Richman, demotion and suspension decisions are clearly within the scope of Cole's supervisors' employment, and thus sovereign immunity blocks the claims in Count V based on the Whistleblower Act. See Kannaby v. U.S. Army Corps of Engineers, 53 F. App'x 776, 778 (7th Cir. 2002) ("Here, Kannaby contends that the defendants' conduct was outside the scope of employment because they lied to him about the dangerousness of the work, misapplied regulations, improperly suspended him, and forced him to work without proper training and equipment. We disagree that these allegations, if true, show that the defendants were acting outside the scope of employment. Assigning employees to work assignments and reprimanding them for refusing are undoubtedly conduct for which his superiors were authorized, and the conduct took place within authorized employment time and place.").

The Ethics Act claim in Count IV, however, is not so neatly resolved. Nevertheless, it is also barred by the Eleventh Amendment because the waiver of sovereign immunity does not evince a clear indication of waiver of the Eleventh Amendment right to be free of suit in federal court, instead the Ethics Act only provides that suit is appropriate in Illinois circuit courts. See Block v. Ill. Sec'y of State, No. 09-117-DRH, 2010 WL 706043, at *3 (N.D. Ill. Feb. 24, 2010) ("The State Officials and Employees Ethics Act provides only that '[t]he circuit courts of this State shall have jurisdiction to hear cases brought under this Article.' 745 ILCS 430/15-25 (2009). Plaintiff points to this provision to support his position that Illinois has expressly waived its sovereign immunity. However, while Illinois might have consented to suit in its own Courts, nothing in the statute states that it has consented to suit in federal courts."); see also Osteen v. Henley, 13 F.3d 221, 224 (7th Cir. 1993) ("In effect [plaintiff] is arguing that a state cannot waive its sovereign immunity in part; if the state doesn't want to be sued in federal court, it can't establish a court of claims to hear suits against it. But since a state can waive its sovereign immunity to suit in its own courts without thereby being deemed to have waived its Eleventh Amendment immunity to suit in federal court, we cannot see why a state cannot confine damages suits against itself to a particular state court." (citations omitted)). Thus, Count IV must also be dismissed on immunity grounds.

7

Accordingly, the motion to dismiss is granted as to Counts IV and V.[4]

### E. Conspiracy

Defendants next argue that Count VI fails to state a claim for § 1985(3) conspiracy. Section 1985(3) requires a plausible allegation that more than one defendant agreed to engage in unconstitutional conduct based on racially motivated animus. See Payton v. Rush-Presbyterian-St. Luke's Med. Cntr., 184 F.3d 623, 632 (7th Cir. 1999). Defendants argue, however, that Count VI should be dismissed on account of the intra-corporate conspiracy doctrine, which holds that "a conspiracy cannot exist solely between the members of the same entity." Id. There are exceptions to the doctrine available in "egregious circumstances." Id. (quotation marks omitted). The two exceptions are (1) "where corporate employees are shown to have been motivated solely by personal bias," and (2) where "the conspiracy was part of some broader discriminatory pattern . . . , or . . . permeated the ranks of the organization's employees." Hartman v. Bd. of Trs. of Cmty. Coll. Dist. No. 508, 4 F.3d 465, 470-71 (7th Cir. 1993). Plaintiff admits that the defendants are all a part of the same entity, but very briefly argues that he meets both exceptions.

As to the first, the Seventh Circuit is clear that the exception applies only where it is plausible that the individuals acted solely from personal bias. See id. at 470. The example given by the Court includes the Ku Klux Klan incorporating to avoid conspiracy liability for "carrying out acts of violence." Travis v. Gary Cmty. Mental Health Ctr., Inc., 921 F.2d 108, 110 (7th Cir. 1990). There is no suggestion of anything resembling that level of egregiousness in Cole's complaint, nor is there a plausible suggestion that defendants were only motivated by selfishness (rather than the business of running NIU). Accordingly, that exception will not save his conspiracy claims.

As to the second, the allegations in the complaint include a handful of officers (in the context of a very large public university) who made one demotion, one suspension decision, and allegedly created a hostile work environment, all of which allegedly adversely affected plaintiff, and only plaintiff. That is far from either a broad discriminatory pattern or a plausible allegation that discriminatory behavior had permeated the ranks of the organization's employees. See Travis, 921 F.2d at 111 (noting that multiple acts by a relatively small group of corporate actors would not overcome the intra-corporate conspiracy doctrine). Thus, the second exception will not save his conspiracy claim from dismissal, either, based on the intra-corporate conspiracy doctrine. Consequently, the motion to dismiss Count VI is granted.

---

[4]Because this is sufficient to dismiss plaintiff's Whistleblower Act claims, the court need not consider defendants argument that the allegations in the complaint do not plausibly allege a claim pursuant to the Whistleblower Act.

## III. CONCLUSION

The motion to dismiss is granted as to Counts IV, V, and VI, and denied in all other respects.

Date: 8/5/2014 ENTER:

_____
FREDERICK J. KAPALA

District Judge

9